UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

L.A. T SHIRT & PRINT, INC.,
d/b/a RIOT SOCIETY,
a California corporation,

                        Plaintiff,

        v.

RUE 21, INC., a Delaware corporation;
6 TWO APPAREL GROUP, LTD., a New York
corporation; and DOES 1 through 10,
inclusive,

                        Defendants.

Docket No.:   16-CV-5400
                 16-CV-5706
                 16-CV-5710

---

L.A. T SHIRT & PRINT, INC.,
d/b/a RIOT SOCIETY,
a California corporation,

                        Plaintiff,

        v.

ROSS STORES, INC., a Delaware
corporation; 6 TWO APPAREL GROUP, LTD.,
a New York corporation; and DOES 1
through 10, inclusive,

                        Defendants.

---

L.A. T SHIRT & PRINT, INC.,
d/b/a RIOT SOCIETY,
a California corporation,

                        Plaintiff,

        v.

SEARS HOLDINGS CORPORATION, a Delaware
corporation; SEARS ROEBUCK AND CO., a
New York corporation; KMART
CORPORATION, a Michigan corporation; 6
TWO APPAREL GROUP, LTD., a New York
corporation; and DOES 1 through 10,
inclusive,

                        Defendants.

---

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

L.A. T SHIRT & PRINT, INC.,
d/b/a RIOT SOCIETY,
a California corporation;
BEN KWOK, *an individual,*

                  Plaintiffs,

        v.

RUE 21, INC., a Delaware corporation;
6 TWO APPAREL GROUP, LTD., a New York
corporation; and DOES 1 through 10,
inclusive,

                Defendants.

Docket No.: 16-CV-5702
               16-CV-6017
               16-CV-6021

---

L.A. T SHIRT & PRINT, INC.,
d/b/a RIOT SOCIETY,
a California corporation;
BEN KWOK, *an individual,*

                  Plaintiffs,

        v.

SEARS HOLDINGS CORPORATION, a Delaware
corporation; SEARS ROEBUCK AND CO., a
New York corporation; KMART
CORPORATION, a Michigan corporation; 6
TWO APPAREL GROUP, LTD., a New York
corporation; and DOES 1 through 10,
inclusive,

                Defendants.

---

L.A. T SHIRT & PRINT, INC.,
d/b/a RIOT SOCIETY,
a California corporation;
BEN KWOK, *an individual,*

                  Plaintiffs,

        v.

ROSS STORES, INC., a Delaware
corporation; 6 TWO APPAREL GROUP, LTD.,
a New York corporation; and DOES 1
through 10, inclusive,

                Defendants.

---

MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS

Jack S. Dweck
On the Brief

**THE DWECK LAW FIRM, LLP**
10 ROCKEFELLER PLAZA
NEW YORK, NY 10020

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................... 1

STATEMENT OF FACTS ............................................

POINT I

      THE STANDARDS FOR DISMISSAL UNDER FRCP 12(b)(6) .......... 4

  A. DETERMINING COPYRIGHT INFRINGEMENT ...................... 6

  B. UNDER THE APPLICABLE PRECEDENTS THERE IS "NO SUBSTANTIAL
     SIMILARITY" IN THIS CASE ................................ 8

  1. Folio Impressions, Inc. v. Byer California ............... 8

  2. Kerr v. The New York Magazine, Inc. ...................... 9

  3. Nicholls v. Tufenkian Import/Export Ventures, Inc. ....... 11

  C. THE PLAINTIFFS' WORKS HAVE LIMITED, IF ANY PROTECTION UNDER
     THE COPYRIGHT ACT ....................................... 12

  D. PLAINTIFFS CANNOT ESTABLISH SUBSTANTIAL SIMILARITY ....... 16

  1. The Defendants' Aztec Indian Head Bear and Elephant Shirts
     Contain None of the Limited Protectable Expressions Present
     in the Plaintiffs' Designs ............................... 17

  2. The Defendants' Shirt Contains None of the Limited
     Protectable Expressions Present in the Plaintiffs' Designs . 18

  3. The Differences Between the Works Overwhelm Any
     Similarities ............................................. 19

POINT II

      THE PLAINTIFFS' COPYRIGHT REGISTRATIONS FOR THE AZTEC BEAR
      WITH HEADDRESS AND MOSAIC ELEPHANT DEPICTIONS ARE INVALID
      AND NULLIFIED SINCE DEPICTIONS OF ANIMALS AND THEIR
      RESPECTIVE DESIGN ELEMENTS ARE UNORIGINAL, UNCOPYRIGHTABLE,
      WERE USED IN COMMERCE AND WERE WITHIN THE PUBLIC DOMAIN FOR
      SEVERAL YEARS PRIOR TO THE FIRST USE DATES OF THESE DESIGNS
      BY THE PLAINTIFFS ....................................... 19

CONCLUSION .................................................. 23

**TABLE OF AUTHORITIES**

## Cases

*Alexander v. Haley,* 460 F.Supp. 40, 45 (SDNY 1978) .................13

*ARICA Institute Inc. v. Palmer,* 770 F.Supp. 188, 190 (SDNY 1991) .....6

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .........................4

*Atari Inc. v. North American Philips Consumer Electronics Corp.,* 672

   F.2d, 607 (7th Cir. 1982) ..................................13, 16, 19

*Baker v. Selden,* 101 U.S. 99, 103 (1879) .......................12, 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ..............4, 5

*Boisson v. Banian, Ltd.,* 273 F.3d 262 (2nd Cir. 2001) ................8

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ......................7

*Computer Associates Int'l. Inc. v. Altai, Inc.,* 982 F.2d 693, 710, 711

   (2d Cir. 1992)...................................................16

*Conn. Comty. Bank v. Bank of Greenwich,* 578 F. Supp. 2d 405 (D. Conn.

   2008).............................................................3

Dial-A-Mattress Operating Corp. v. Mattress Madness Inc., 841 F.Supp.

   1339, 1347 (EDNY 1994)..........................................20

*Durham Industries, Inc. v. Tomy Corporation,* 630 F.2d 905, 912 (1930)

   ...........................................................8, 12

*Eden Toys Inc. v. Marshall Field & Co.,* 675 F.2d 498 (2nd Cir. 1982) ..6

*Folio Impressions, Inc. v. Byer California,* 937 F.2d 759, 765 (2nd Cir.

   1991).......................................................7, 8, 16

*Gavish v. Revlon, Inc.,* No. 00 Civ. 7291(SHS), 2004 WL 2210269, at *10

   (S.D.N.Y. Sept. 30, 2004).........................................5

*Gund Inc. v. Applause, Inc.,* 809 F.Supp. 304, 307 (SDNY 1993) ........6

*Harris v. Mills*, 572 F.3d 66 (2d Cir. 2009) .........................4

*Hobbs v. John,* 2012 WL 5342321, at *7 (N.D.Ill. 2012) ...............16

I.M. Nimmer, The Law of Copyright §10 at 32 (1975) .................22

Ideal Toy Corp. v. Fab-Lu Ltd., 360 F.2d 1021, 1022 (2d Cir. 1966) ...9

*Incredible Technologies Inc. v. Virtual Technologies, Inc.,* 400 F.3d
  at 1007 (7th Cir. 2005) ...................................13, 15, 16

Johanna Farms, Inc. v. Citrus Bowl, Inc., 468 F.Supp. 866, 875 (EDNY
  1978)........................................................20

*Jones v. Halstead Mgmt. Co.,* 14 Civ. 3125, 2015 WL 366244 (S.D.N.Y.
  Jan. 27, 2015)...............................................5

*Kerr v. New Yorker Magazine*, 63 F.Supp. 2d 320, 324 (SDNY 1999) ..6, 9,
  10, 11

*Knitwaves Inc. v. Lollytogs, Ltd.,* 71 F.3d 996, 1002 (2nd Cir. 1995) .16

La Societe Anonyme des Parfums, 495 F.2d 1265, 1271 (2nd Cir. 1974) ..20

*Mazer v. Stein,* 347 U.S. 201, 217, 74 S.Ct. 460, 470, 98 L.Ed. 630
  (1954)....................................................8, 12, 21

Mazer v. Stein, 349 US 201, 217 74S.Ct. 460, 470, 986 Ed. 630 (1954) 21

McCarthy On Trademarks and Unfair Competition, § 19:3 (4th Ed. 2012) .20

*Nicholls v. Tufenkian Import/Export Ventures, Inc.,* 367 F.Supp.2d 514,
  (SDNY 2005)..................................................11

Novelty Textile Mills v. Joan Fabrics Corp., 558 F.2d. 1090, 1093 (2d
  Cir. 1977)...................................................9

*Peter Pan Fabrics Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489
  (1960)......................................................6

*Poindexter v. EMI Record Group Inc.,* No. 11-CIV-559, 2012 WL 1027639
  (S.D.N.Y. Mar. 27, 2012).....................................5

*Reyher v. Children's Television Workshop,* 533 F.2d 87, 90 (2nd Cir.

   1976) ........................................................8, 13

*Sandeval v. New Line Cinema Corp.,* 147 F.3d 215, 217 (2nd Cir. 1998) .19

*Sassafras Enters., Inc. v. Roseho, Inc.,* 889 F.Supp. 343, 346-47

   (N.D.Ill. 1995) .................................................15

*Stiles v. HarperCollins Publishers L.L.C.,* 801 F.Supp.2d 233, 241

   (S.D.N.Y. 2011) .................................................13

*Town of Windsor v. Avery Dennison Corp.,* 2012 U.S. Dist. LEXIS 27264

   (S.D.N.Y. March 1, 2012) .........................................5

United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 97, 39 S.Ct.

   48, 63 L.Ed. 141 (1918); ........................................20

*United States v. Sessa*, 92-CR-351 (ARR), 2011 WL 256330, at *25 n.12

   (E.D.N.Y. Jan. 25, 2011) .........................................3

*Whelan Assets, Inc. v. Jaslow Dental Lab Inc.,* 797 F.2d 1222, 1229 (3d

   Cir. 1986) ......................................................15

## Statutes

17 U.S.C. § 102(a) .................................................19

17 U.S.C. § 102(b) .................................................12

Fed.R.Civ.P. 12(b)(6) ...........................................1, 4, 6

Defendants 6 Two Apparel Group, Ltd. and various retailers named as Defendants ("Defendants") submit this Memorandum of Law in Support of Defendants' Motions to Dismiss, pursuant to Fed.R.Civ.P. 12(b)(6) , the Complaints of Plaintiffs L.A. Shirt and Print, Inc. and Ben Kwok ("Plaintiffs"), in six separate consolidated actions.

## PRELIMINARY STATEMENT

In the Complaints, Plaintiffs assert two distinct, but equally flawed claims of copyright infringement against 6 Two Apparel Group, Ltd. ("6 Two or 6 Two Apparel"). First, Plaintiffs' claim that 6 Two infringed its copyrights in designs of an Aztec Indian Bear and a Mosaic Elephant on a polo-style T-Shirt. Plaintiffs' claims all must fail as a matter of law for the reasons stated herein.

In the present case, the Plaintiffs have used the copyrighted designs in 2013 and 2015, respectively. However, the Defendants have learned that the copyright registrations, which reflect the Plaintiffs' first use of the designs alleged to have been created by them, was in 2012. Upon inquiry, archival research from the internet by a Google search which revealed evidence from companies and designers within the apparel and T-Shirt industry, the Aztec Bear and Elephant Mosaic designs, likeness and photographs, including those claimed by the Plaintiffs to be copyrighted, have been around for many, many years, and substantially predate the Plaintiffs' claims of originality. The documentary evidence consists of photographs of products which bear the Aztec Indian Bear and Elephant designs readily available in the marketplace years earlier then Plaintiffs' use. This brings into question the accuracy of the allegations of originality of

1

these designs by the Plaintiffs, along with their self-serving statements that their designs of the Aztec Indian Bear and Mosaic Elephant were original and created by them.  This cannot possibly be true as is detailed in the Affidavits of Morris Michael and Jack S. Dweck in support of this Motion.

It is a fundamental principle of copyright law that copyright protection is only afforded to an artist's original, creative expression.  It does not protect ideas, processes, methods of operation, stock elements and/or any expression that is not original to the author.  But that is precisely what Plaintiffs seek to do here, as the Aztec Indian Bear and the Mosaic Elephant are such simple expressions of basic ideas that they have virtually no originality deserving of protection under the Copyright Act.  They consist of common elements that have been drawn and redrawn many times on many products for hundreds of years.  Depictions of animals have been around since the stone age, evidenced by prehistoric drawings and carvings on rocks discovered over the years in caves and architectural digs.

Simple Google and multi-internet searches reveal hundreds of illustrations of designs of Aztec Indian Bears, including many which are virtually identical to those shown in the Plaintiffs' design, with many that are displayed on T-shirts.  (See Affidavits of Morris Michael and Jack S. Dweck, and the Exhibits attached thereto).  Likewise, a similar search reveals hundreds of designs of multi-

colored elephants that are identical or virtually identical to the ones extracted by the Defendants from the Google search.[1]

The legal precedents set forth within this Memorandum conclusively establish the lack of *bona fides* of the causes of action based upon prior use of the designs alleged by the Plaintiffs to be original. In addition, the incontrovertible facts are that designs of likenesses of bears and elephants including those claimed to have been copyrighted by Plaintiffs in their Complaint have been in the public domain for many years, extending into decades if not centuries. The particular designs and their elements, claimed by the Plaintiffs to be their original, (Compl. ¶14), are in fact commonplace, functional, utilitarian, unoriginal, *scene a faire*, which are sought to be protected here are noncopyrightable ideas, and have been within the public domain for years (see Exhibits H-M inclusive).

Equally important, to the minimal extent the Plaintiffs' designs might deserve any minimal copyright protection, they are not substantially similar to the allegedly infringing T-shirts sold by the Defendants. Indeed, a simple side-by-side comparison demonstrates that the Plaintiffs and the Defendants' T-shirts do not share a single expressive element. In other words, any similarities exist at only the most abstract, unprotectable level, and thus, are not actionable.

---

[1] The Court may take judicial notice of printouts from Google in connection with a motion to dismiss. *United States v. Sessa*, 92-CR-351 (ARR), 2011 WL 256330, at *25 n.12 (E.D.N.Y. Jan. 25, 2011) ("A court may take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.") (quoting Fed. R. Evid. (20)(b)). *See also Conn. Comty. Bank v. Bank of Greenwich*, 578 F. Supp. 2d 405 (D. Conn. 2008) (taking judicial notice of Google search results).

Plaintiffs have failed to state any claim upon which relief can be granted, which lead to the only conclusion that Plaintiffs' actions must all be dismissed.[2]

## STATEMENT OF FACTS

A comparison of the Designs identified in Plaintiffs' copyrights, and the allegedly infringing 6 Two Apparel shirt designs are set forth in the Affidavit of Morris Michael before the Court. In the Plaintiffs' six complaints, all of the allegations are substantially identical. They are depicted on actual T-Shirts, as set forth on pages 6 and 7 of the Morris Michael Affidavit.

## POINT I

### THE STANDARDS FOR
### DISMISSAL UNDER FRCP 12(B)(6)

A Rule 12(b)(6) motion challenges the legal viability of a complaint. See Fed.R.Civ.P. 12(b)(6). To survive a motion to dismiss, Plaintiffs are required to set forth sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action" and "mere conclusory statements" will not suffice. *Id.* "[A]lthough 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' is inapplicable to legal conclusions." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). In addition, "bald contentions, unsupported characterizations, and legal conclusions"

---

[2] The Plaintiffs' designs are either of an Aztec Indian Bear and or a Mosaic multi-colored Elephant.

cannot defeat a motion to dismiss. *Gavish v. Revlon, Inc.*, No. 00
Civ. 7291(SHS), 2004 WL 2210269, at *10 (S.D.N.Y. Sept. 30, 2004)
(citation omitted). Furthermore, the factual allegations must
"plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at
1950. Plaintiffs must allege "more than a sheer possibility that a
Defendant has acted unlawfully." *Id.* at 1949 (*citing Twombly*, 550 U.S.
at 556).

On a motion to dismiss, a court may consider: (1) the facts
alleged in the complaint; (2) documents attached to the complaint; (3)
documents incorporated by reference in the complaint; and (4)
documents that the court deems integral to the complaint. *See Jones
v. Halstead Mgmt. Co.*, 14 Civ. 3125, 2015 WL 366244, at *4 (S.D.N.Y.
Jan. 27, 2015). If a document that is attached to, referenced in or
otherwise integral to the complaint, contradicts the allegations set
forth in that pleading, "the document, not the allegations, control,
and the court need not accept the allegations in the complaint as
true." *Poindexter v. EMI Record Group Inc.*, No. 11-CIV-559, 2012 WL
1027639, *2 (S.D.N.Y. Mar. 27, 2012). On a motion to dismiss, a court
may also consider facts of which judicial notice may be taken pursuant
to Federal Rule of Evidence 201. *See Town of Windsor v. Avery
Dennison Corp.*, 2012 U.S. Dist. LEXIS 27264, at *14 (S.D.N.Y. March 1,
2012). Guided by these principles, each cause of action in each of
the subject Complaints fails to survive this inquiry.

In copyright cases, dismissal on the pleadings is appropriate if
the Court concludes that the Defendants' work is not substantially
similar to the protectable elements in the Plaintiffs' work (affirming

dismissal of copyright infringement claim on Fed. R. Civ. P. 12(b)(6)
motion when works were deemed not substantially similar). The test
for substantial similarly is an objective test. District courts may
determine copyright infringement claims at the motion to dismiss stage
of litigation. Here, the works in issue are identified in the
Plaintiffs' Complaints, and the Court may determine, as a matter of
law, if the shirts from 6 Two Apparel are substantially similar to any
protectable elements of the shirts of L.A. T-Shirt. The comparison
reveals no substantial similarity.

## A.    DETERMINING COPYRIGHT INFRINGEMENT

To establish copyright infringement, Plaintiffs must prove "(1)
ownership of a valid copyright, and (2) copying of constituent
elements of the work that are original." *Feist Publ'ns, Inc. v. Rural
Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Eden Toys Inc. v. Marshall
Field & Co.*, 675 F.2d 498 (2nd Cir. 1982); *Peter Pan Fabrics Inc. v.
Martin Weiner Corp.*, 274 F.2d 487, 489 (1960); *Gund Inc. v. Applause,
Inc.*, 809 F.Supp. 304, 307 (SDNY 1993). "Copying" as used in the
second element entails two concepts: First, there is the factual
question whether the Defendants, in creating its product, had access
and used the Plaintiffs' material as a model or template. The second,
legal question is whether the Defendants' work is substantially
similar to Plaintiffs' work such, that liability may attach. *Eden
Toys Inc., supra,* at 675 F.2d at 499; *Kerr v. New Yorker Magazine*, 63
F.Supp. 2d 320, 324 (SDNY 1999); *Gund, Inc., supra,* 809 F.Supp. at
307; *ARICA Institute Inc. v. Palmer,* 770 F.Supp. 188, 190 (SDNY 1991);
(4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright, § 13.1[B]*

(2011)).  For purposes of this motion, 6 Two Apparel alleges that the

Plaintiffs have not demonstrated access to their copyrighted work, and

substantial similarity as required by the above citied cases does not

exist.  The Plaintiffs must prove that the two works share enough

unique features to give rise to a breach of duty not to copy another's

work.  A side by side comparison shows Plaintiffs' and Defendants'

designs are different, not substantially similar at all.  Thus,

Plaintiffs cannot prove similarities or copying; *Folio Impressions,*

*Inc. v. Byer California,* 937 F.2d 759, 765 (2nd Cir. 1991).

Fundamentally, the tests are the same – this Court must determine

whether 6 Two Apparel copied enough material of value of the

Plaintiffs' which is protectable, to give rise to liability.  Here,

the quantification of the taking is not an issue, as the 6 Two Apparel

Shirts incorporate none of the limited protectable expression

contained in the Plaintiffs' works.  Before undertaking the

substantial similarity analysis, however, this Court must first

consider what is protectable, if anything, in the Plaintiffs'

products, since the courts have made it abundantly clear that if there

is no substantial similarity, then the copyright is not protectable

and there can be no claim for infringement; *Celotex Corp. v. Catrett,*

477 U.S. 317 (1986).

Thus, as a threshold matter, the extent of Plaintiffs' copyright

protection in their designs must be determined, by filtering out

ideas, processes, facts, idea/expression mergers, and other

unprotectable elements of Plaintiffs' copyrighted materials to

ascertain whether the Defendants infringed protectable elements of

those materials; *Boisson v. Banian, Ltd.,* 273 F.3d 262 (2nd Cir. 2001).
This step is particularly important in a case such as this where the
works at issue depict actual objects, to avoid giving the Plaintiffs
an unlawful right to the idea of such a depiction, as opposed to the
actual expression; *Mazer v. Stein,* 347 U.S. 201, 217, 74 S.Ct. 460,
470, 98 L.Ed. 630 (1954); *Durham Industries, Inc. v. Tomy Corporation,*
630 F.2d 905, 912 (1930); *Reyher v. Children's Television Workshop,*
533 F.2d 87, 90 (2nd Cir. 1976), *cert. den.,* 429 U.S. 980, 97 S.Ct.
492, 50 L.Ed.2d 588.

**B.   UNDER THE APPLICABLE PRECEDENTS THERE
IS "NO SUBSTANTIAL SIMILARITY" IN THIS CASE.**

The conclusion that there is no substantial similarity between
the two designs in this case is solidly reinforced, and indeed is
inescapable, when the applicable precedents are considered.

**1.   Folio Impressions, Inc. v. Byer California.**

*Folio Impressions, Inc. v. Byer California,* 937 F.2d 759, (2nd
Cir. 1991) is a decision of the U.S. Court of Appeals for the Second
Circuit that constitutes controlling authority in this case.   The
facts in *Folio* present a similar fact pattern to this case: the
Plaintiffs in *Folio* copyrighted its rose floral pattern and alleged
that the Defendants in *Folio* had infringed on its copyright with
Defendants' rose floral pattern.   From the description given to the
two rose floral designs in *Folio,* the designs in that case appeared to
have many similarities, far more than any that can be said to exist in
the present case.

The Second Circuit affirmed the judgment dismissing the
Complaint, ruling that the two designs were not substantially similar

and there was no copying. In identifying the differences that resulted in the "no substantial similarity" ruling, the Second Circuit stated:

> "Although the roses in both designs are placed against the background in a similar straight line pattern, the roses themselves are not substantially similar. As the district court properly pointed out, each of the roses in pattern# 1365 is identical, while the roses in the Baroque Rose pattern differ from each other in their details and nuances. The Baroque Roses appear to be in a soft focus and the Folio Roses has a sharper, clearer image. Moreover, though playwrights and poets from William Shakespeare to Gertrude Stein have extolled the beauty of this five-petaled flower, by the rose's very nature one artist's rendering of it will closely resemble another artist's work. For these reasons, we believe that 'an average lay observer would [not] recognize the alleged copy as having been appropriated from the copyrighted work.' Novelty Textile Mills v. Joan Fabrics Corp., 558 F.2d 1090, 1093 (2d Cir. 1977) (quoting Ideal Toy Corp. v. Fab-Lu Ltd., 360 F.2d 1021, 1022 (2d Cir. 1966))."

937 F.2d at 766.

The reasoning in *Folio* in identifying the differences in the two rose patterns to show that there was no substantial similarity in that case indicates in the present case that the analysis in explaining how the two floral designs are different and not substantially similar is correct. It applies with like force in the present action.

### 2. Kerr v. The New York Magazine, Inc.

*Kerr v. The New Yorker Magazine, Inc.*, 63 F.Supp. 2d 320, (SDNY 1999) involved a claim of copyright infringement based on an illustration appearing on the cover of the magazine New Yorker-- a man with a Mohawk haircut depicting the city skyline. Judge Owen granted Defendants' motion for summary judgment dismissing the Complaint on the ground that the allegedly infringing illustration entitled "Mohawk Manhattan" was not substantially similar to, and thus did not

infringe, a copyrighted work entitled "New York Skyline," even though both illustrations involved a male wearing a "Mohawk" haircut shaped in the form of the New York Skyline.

Plaintiffs Kerr's illustration ("New York Skyline") was a pen-and-ink drawing depicting a male figure facing his viewer at a three-quarter view with a "Mohawk" hairstyle which formed the silhouette of the Manhattan skyline.  Both eyes were visible and seemed to watch the viewer.  The figure had a long nose, a full bottom lip, and had a goatee in the shape of the Statue of Liberty.  He wore a leather jacket and a T-shirt, and had shoulders in a realistic proportion to his head.  The figure wore no jewelry, and the background was blank.

Defendants Kunz's illustration ("Mohawk Manhattan") was in color and depicted a clean-shaven male figure with dark olive skin in profile wearing four earrings and a chain running from a pierced nostril to a pierced earlobe.  The figure's head was tilted slightly downward, and the one eye that was visible was looking downward.  The figure had full lips, a smooth, rounded chin, and a long, straight nose.  The figure had a Mohawk hairstyle, which formed a silhouette of the Manhattan skyline with the buildings in a different order than in Kerr's image.  "Mohawk Manhattan" had a thick neck, with steeply sloped shoulders without clothing.  The background was a night sky in several shades of blue and green, with images of clouds, a crescent moon, and many stars.

In describing the differences between the two drawings, Judge Owen ruled that the similarities between the two related to the non-copyrightable idea of using the New York skyline on someone's head.

The differences were in the expression of that idea.  The expressions had entirely different details in the illustrations and imparted overall a different "feel."  63 F.Supp. 2d at 325-326.

This reasoning in *Kerr v. The New Yorker Magazine, Inc.* is applicable here:  what is similar in the Aztec Indian Bear a Mosaic Elephant designs in this case is the unprotectable idea of using animals with other features.  What is different is the detailed expression of that unprotectable idea.

### 3.  <u>Nicholls v. Tufenkian Import/Export Ventures, Inc.</u>

In *Nicholls v. Tufenkian Import/Export Ventures, Inc.*, 367 F.Supp.2d 514, (SDNY 2005), the owner of a copyright in carpet design called "Prado", sued a competitor for infringement of that company's carpet designs called "Eclipse" and "Total Eclipse." The Court, however, entered judgment for the Defendants on the ground that there were no substantial similarities between the two carpet designs.

In the ruling of "no substantial similarity," the Court discussed the differences between the two patterns and stated:

> "Where Prado incorporates twenty circles, Eclipse and Total Eclipse include twelve.  The circles in Prado are smaller, creating more of a sense that they are independent of the background than is true of Mr. Tufenkian's works.  The transections of the circles in Prado are all proportional - each circle is divided approximately one-quarter/three-quarters -- while the circles in Eclipse and Total Eclipse are transected in varying proportions and sometimes more than once.  And, while the rows and columns of circles in Prado are evenly spaced, there is a slight asymmetry to the spacing between the columns in the Tufenkian designs."

367 F.Supp.2d at 523.  The Court also noted that where the two carpet designs were similar, it was in unprotectable concepts and ideas.

## C.   THE PLAINTIFFS' WORKS HAVE LIMITED, IF ANY, PROTECTION UNDER THE COPYRIGHT ACT

**Ideas**.   It is axiomatic that ideas, as opposed to the author's original expression thereof, are excluded from the substantial similarity analysis.  See 17 U.S.C. § 102(b)(Copyright Act does not protect ideas); *Feist,* 499 U.S. at 350; *Mazer v. Stein, supra,* at 217; *Durham Industries, Inc. v. Tomy Corporation, supra,* (protection does not extend to the idea of a maze chase game in which the player scores points by guiding a central figure, while simultaneously attempting to elude opponents).  Here, the Plaintiffs cannot claim copyright protection in the *idea* of depicting a bear with an Indian Headdress, a multi-colored Mosaic Elephant, or putting such designs of either on a shirt.  Nor can they claim ownership of the *idea* of putting a design or depiction of an elephant or a bear on a shirt.  To allow protection for such general concepts or ideas would be to remove those ideas from the public domain and render them unavailable for the duration of the copyright.  This is precisely what the doctrine underlying the idea-expression dichotomy aims to prevent.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 349, 350, 361 (1991)("This ... promotes the purpose of the Copyright Act by assuring 'authors the right to their original expression,' but also by `encouraging others to build freely upon the ideas and information conveyed by a work.'")

**Methods**.   Nor can the Plaintiffs claim copyright protection in the *method* of affixing a design to a shirt, since this is an unprotectable method or process.  See 17 U.S.C. § 102(b); *Baker v. Selden,* 101 U.S. 99, 103 (1879)(a copyright of a work of mathematical science would not give the author any exclusive rights in the diagrams

12

used to explain the underlying method); *Incredible Techs.*, 400 F.3d at 1012 ("Even if there are multiple methods by which an operation can be performed, a Plaintiffs' choice of a particular method of operation is not eligible for protection."); *Stiles v. HarperCollins Publishers L.L.C.,* 801 F.Supp.2d 233, 241 (S.D.N.Y. 2011)(finding that although two books depicted "a similar process for building a tree house in one tree    . . . a process is not entitled to copyright protection.").

**Scenes a Faire**. Moreover, copyright protection for *"scenes a faire"* which are "incidents, characters or settings which are, as a practical matter, indispensable, or at least standard, in the treatment of a given topic", precludes only *exact* copying of these elements; *Alexander v. Haley,* 460 F.Supp. 40, 45 (SDNY 1978).  In other words, "a copyright owner can't prove infringement by pointing to features of his work that are found in the Defendants' work as well but that are so rudimentary, commonplace, standard or unavoidable that they do not serve to distinguish one work within a class of works from another." *Reyher v. Children's Television Workshop, supra,* at 91. With respect to the depiction of an Aztec Bear or an Indian Headdress, the rudimentary, commonplace scenes a faire would include generic likenesses of bears, Indians, headdresses or caricatures of them, or such similar depiction of such animals in every circus or comic books. *Incredible Techs.*, 400 F.3d at 1011-12 (finding that wind meter and club selection features, and sand traps, water hazards, menu screens and distance displays are indispensable *scenes a faire* with respect to golf video game); *Atari Inc. v. North American Philips Consumer Electronics Corp.,* 672 F.2d, 607 (7th Cir. 1982) (mazes, tunnels and

13

scoring tables are indispensable *scenes a faire* in Pac-Man maze chase game).  With respect to Plaintiffs' designs, the *scenes a faire* would include photographs of circus bears and elephants, blow ups of such animals, photographs of animals for parades (*i.e.,* Macy's Thanksgiving Parade).  Indeed, this imagery is so commonplace that a Google search of bear and Indian Headdress designs reveals hundreds of images that are practically identical to the Plaintiffs' designs.  As such, assuming for purposes of this Motion, that Plaintiffs own valid copyrights in the bear and elephant designs, infringement liability can be imposed for only identical copying.  There are no pleadings or evidence of identical copying which is fatal to Plaintiffs' claims.

**Other Unoriginal or Non-Creative Elements**.  "The *sin qua non*e of copyrightability is originality.  To qualify for copyright protection, a work must be original to the author.  Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Feist,* 499 U.S. at 345.  Solely for purposes of this Motion, Defendants dispute that the Plaintiffs' Works contain originality or creativity.  Under such circumstances they are not protectable under the copyright statute.  However, "the mere fact that a work is copyrighted does not mean that every element of the work may be protected . . . copyright protections may extend only to those components of a work that are original to the author." *Feist* at 348 of 499 U.S.  Here, the Aztec Indian Head Bear designs, as depicted in the Plaintiffs' copyright registration, cannot be considered original.  The designs depicted in the Plaintiffs'

registrations are of the most basic rudimentary depictions possible.
They have no doubt been within the public domain for time immemorial.
*See Stiles*, 801 F.Supp.2d at 241 (finding that "the basic idea for a
tree house with four short walls, a pyramid-shaped roof, and a
trapdoor is hardly original").  Indeed, an internet search reveals
hundreds of images of identical or virtually identical Elephants and
Bears, and Indian Head designs.  It cannot be said that the
Plaintiffs' images of the mosaic multi-colored Elephants, the Aztec
Indian Head Bear images on the Defendants' shirts are original to the
Plaintiffs' designs.

   **Utilitarian Components**.  Finally, a work will not be considered
original for purposes of copyright protection when its content is
dictated by utilization concerns apart from the author's creativity.
*Baker v. Selden,* 101 U.S. 99, 25 L.Ed. 841 (1879); *Incredible
Technologies Inc. v. Virtual Technologies, Inc.*, 400 F.3d at 1007 (7th
Cir. 2005)(explaining and affirming lower court finding that
instructions for maneuvering track ball on video game were
"utilitarian explanations of that system and are not sufficiently
original or creative to merit copyright protection"); *Whelan Assets,
Inc. v. Jaslow Dental Lab Inc.,* 797 F.2d 1222, 1229 (3d Cir. 1986),
*cert. den.,* 479 U.S. 1031, 107 S.Ct. 877, 93 L.Ed.2d 831 (1987);
*Sassafras Enters., Inc. v. Roseho, Inc.,* 889 F.Supp. 343, 346-47
(N.D.Ill. 1995)(pamphlet concerning use and care of pizza stone lacks
originality and is not copyrightable, as the content is dictated by
and flows from, "the characteristics and intended use of the product,
not from the imagination of any independent author").  When the

Plaintiffs settled upon their particular visualization of the Aztec Indian Head Bear Design, and the multi-colored Elephant, the depictions are dictated entirely by the end product, not an author's creativity.  Thus, the objects on the Plaintiffs' shirts are not original, creative works, and therefore are not protectable.

It is clear that the Plaintiffs copyrights cannot be the subject of even very limited, thin protection.  There is no clear evidence of identical copying by the Defendants, which might give rise to an infringement claim. *Folio Impressions, Inc. v. Byer California, supra,* at 766.  The Plaintiffs' and Defendants' Shirts are *not* identical, and thus Plaintiffs' claims must fail.

D.   **PLAINTIFFS CANNOT ESTABLISH SUBSTANTIAL SIMILARITY**

The final task is for the Court to determine whether the Defendants' Shirts have appropriated *protectable* material of substance and value from the Plaintiffs' Shirts. *Computer Associates Int'l. Inc. v. Altai, Inc.,* 982 F.2d 693, 710, 711 (2d Cir. 1992); *Incredible Techs.*, 400 F.3d at 1011 (*quoting Atari,* 672 F.2d at 614).  What makes the analysis so simple in this case, and particularly well-suited for dismissal on the pleadings, is that the Defendants' Shirts do not incorporate *a single protectable design element* of the Plaintiffs' products or its designs. *Knitwaves Inc. v. Lollytogs, Ltd.,* 71 F.3d 996, 1002 (2nd Cir. 1995); *Hobbs v. John,* 2012 WL 5342321, at *7 (N.D.Ill. 2012).  It is abundantly clear that 'if the copied parts are not on their own, a protectable expression, then there can be no claim for infringement of the reproduction right."

16

**1.    The Defendants' Aztec Indian Head Bear and Elephant
Shirts Contain None of the Limited Protectable
Expressions Present in the Plaintiffs' Designs**

Quite simply, apart from the unprotectable elements described above, the Plaintiffs cannot identify a single expressive element that can be found in both the Plaintiffs' designs and the Defendants' Shirts, common, protectable material that would rise to the level of "substance and value" required under the ordinary observer test.   The design differences can be summarized as follows:

- The shirt in the Plaintiffs' designs are black short-sleeved. The Defendants' Shirt has a full Aztec design on the sleeves (Exhibit B1).

- The Bear Design on the Plaintiffs' Shirt faces left (Exhibit A1), whereas the Design in the Defendants' Shirt has the bear facing right (Exhibits B1, B2 and B3).

- The Plaintiffs' Design is facing upwards and to the wearer's left (Exhibit A1), whereas the Design in the Defendants' Shirt is facing straight and to the wearer's right (Exhibit B1).

- The Plaintiffs' Design shows the Indian Bear holding a container of liquid ((Exhibit A1), whereas the Defendants' Shirt is depicted with straight arms (Exhibits B1 and B2).

- Although both designs depict very basic and generic depictions of Bears and Indian Headdress, the shapes and designs are not protectable under copyright law.   They differ in that the face is turned upwards (Exhibit A1) in the Defendants' Shirt, while remaining flat in the Plaintiffs' depiction (Exhibit B1).

- The Plaintiffs' shirts and label contain a full blown legible logo "Riot Society" with a figure of a person on a skateboard, whereas the Defendants' Shirts have a label with bold letters $2 \frac{MON}{KEYS}$ and with figures of two monkeys inserted within the letters.   There can be no mistake of the origin of each product being different.

In short, other than the unprotectable ideas, methods and stock elements common to the Plaintiffs' depictions, and the

Defendants' Shirts, nothing about the works of the parties in issue is similar. Thus, Plaintiffs' claims should be dismissed as a matter of law.

    **2.   The Defendants' Shirt Contains None of the Limited**
            **Protectable Expressions Present in the Plaintiffs' Designs**

As discussed above, the concept of a Bear with Aztec Indian Headdress and multi-colored Elephants and the stock element of the caricatures as thus portrayed are unprotectable. As a plain comparison of the Plaintiffs' and the Defendants' Shirts reveal, these designs have *nothing* in common apart from those abstractions (and certainly nothing that would qualify as a protectable material rising to the level of "substance and value"). Indeed, for the following reasons, the minimal expression set forth in the designs are not substantially similar:

- The image in the Plaintiffs' design is a figure on a black background (Exhibits A1 and A2), whereas the image in the Defendants' Shirt is a figure on a brown background (Exhibits B1-B6).

- The Plaintiffs' garment has the "Riot Society" logo prominently embossed in large white letters adjacent to the left leg (Exhibit A1), with a large white label marked, "Riot Society" (Exhibit A2), while the Defendants' garment has a large imprinted label marked "FRESH LAUNDRY" or "2 $\frac{MON}{KEYS}$ (Exhibit B4).

Thus, for purposes of the relevant substantial similarity analysis, other than the unprotectable concept of an Aztec Indian Headdress Bear and a multi-colored Elephant, nothing about the Plaintiffs' and Defendants' images are similar. Thus, the Plaintiffs' Second Claim in each Complaint should be dismissed as a matter of law.

### 3.   The Differences Between the Works Overwhelm Any Similarities

Finally, even if any of the similar material in both the Plaintiffs' and Defendants' Shirts are copyrightable – and the Plaintiffs' dispute that it is – such material represents only a *de minimus* amount, and is overwhelmed by the vast differences between the works, such that no ordinary reasonable person would conclude that the Defendants unlawfully appropriated the Plaintiffs' alleged protectable expression, by taking material of substance and value. *Sandeval v. New Line Cinema Corp.,* 147 F.3d 215, 217 (2nd Cir. 1998); *Atari,* 672 F.2d at 614.  As a result, the Plaintiffs' actions must fail as a matter of law regardless of any such similarities.

### POINT II

**THE PLAINTIFFS' COPYRIGHT REGISTRATIONS FOR THE AZTEC BEAR WITH HEADDRESS AND MOSAIC ELEPHANT DEPICTIONS ARE INVALID AND NULLIFIED SINCE DEPICTIONS OF ANIMALS AND THEIR RESPECTIVE DESIGN ELEMENTS ARE UNORIGINAL, UNCOPYRIGHTABLE, WERE USED IN COMMERCE AND WERE WITHIN THE PUBLIC DOMAIN FOR SEVERAL YEARS PRIOR TO THE FIRST USE DATES OF THESE DESIGNS BY THE PLAINTIFFS**

Copyright law protects only "original works of authorship fixed in any tangible medium of expression[.]" 17 U.S.C. § 102(a).  "The *sine qua non* of copyright is originality.  To qualify for copyright protection, a work must be original to the author." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991).  Here, the nullification of the copyright registrations is based upon the Plaintiffs' alleged creation of likenesses of animals.  Within the apparel industry, it is common knowledge that garments, especially T-Shirts, have been sold and have marketed in commerce for many years before the Plaintiffs entered the market.  It is well settled that

rights to a mark derive not from a registration or adoption of a mark, but from its use. *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97, 39 S.Ct. 48, 63 L.Ed. 141 (1918); McCarthy On Trademarks and Unfair Competition, § 19:3 (4th Ed. 2012).  "The user who first appropriates the mark, obtains an enforceable right to exclude others from using it, as long as the initial appropriation and use are accompanied by an intention to continue to exploit the mark commercially." *La Societe Anonyme des Parfums*, 495 F.2d 1265, 1271 (2nd Cir. 1974); *Dial-A-Mattress Operating Corp. v. Mattress Madness Inc.*, 841 F.Supp. 1339, 1347 (E.D.N.Y. 1994)("the first user who continuously uses an "inherently distinctive" mark in the relevant market, is the senior user and has priority over any second comers."). A satisfactory showing of priority gives the registrant a significant advantage in proving that it had an exclusive right to the sale and marketing of animal likenesses; *Johanna Farms, Inc. v. Citrus Bowl, Inc.*, 468 F.Supp. 866, 875 (E.D.N.Y. 1978) ("where claimants dispute the right to use a particular trademark, the general rule is that priority of appropriation and use determines which litigant will prevail in its use.")

There is overwhelming evidence that many persons and entities have sold garments with likenesses and illustrations of animals in commerce years before the Plaintiffs' first use of the copyrighted registrations as they are described in the various Complaints.

Morris Michael, one of the principals of 6 Two Apparel, has attested to the fact that many vendors were marketing garments, including T-shirts for years prior to the Plaintiffs' registrations.

This has been documented by the exhibits annexed to the Affidavits on the Motion to Dismiss.  Consistent with these statements are results of computer and Google searches, which reflect that sales of animal likenesses, including bears and elephants, have taken place for years prior to Plaintiffs' first publication.  On the basis of these documents, fortified by the Michael and Dweck Affidavits, 6 Two Apparel has come forward with solid evidence to establish sales of the garments with animal likenesses, the subject of this action, long before the first use dates as claimed by the Plaintiffs.  This evidence is compelling that 6 Two Apparel and other companies were selling in commerce, similar garments which demonstrate that it, and other companies in the apparel business, are the senior users of those animal likenesses.

In addition, since the printed T-shirts are basically functional, the Plaintiffs' registrations are ineffective, and do not have any entitlement to protection, since copyright protection attaches to an expression of an idea, not to the idea itself.  *Mazer v. Stein*, 349 US 201, 217 74 S.Ct. 460, 470, 986 Ed. 630 (1954).

On this basis, the copyrights of the Plaintiffs are not protectable, with the result that the Defendants are not excluded from the sale of the T-Shirts with likenesses of bears and elephants.  On the basis of the outstanding precedents, the causes of action for copyright infringement in the six Complaints should be dismissed.

Since the animal likenesses of a bear and an elephant have been in existence years before the Plaintiffs' first use, there can be no

claim of originality by the Plaintiffs.  This is a major element for copyright protection.  I.M. NIMMER, THE LAW OF COPYRIGHT §10 at 32 (1975).

On an overall basis, this lawsuit is nothing more than an attempt by the Plaintiffs to "extort" money from the Defendants based upon an illegal representation that is not original and not entitled to protection.  To honor the Plaintiffs' very questionable posture in this case, which has been very seriously contradicted by documentary evidence would simply put a weapon for harassment at the disposal of a copycat, intent on appropriating and monopolizing functional and commonplace aesthetic design elements, that individually and collectively lack originality and have long been in the public domain.

None of the similarities between the Plaintiffs' and the Defendants' designs contain protectable elements.  Accordingly, the works cannot be found to be "substantially similar" as a matter of law.  The Defendant 6 Two Apparel and the co-Defendants respectfully submit that the Motion to Dismiss the Plaintiffs' Complaints, in each of the six actions should be granted, with prejudice, and without leave to amend, and for judgment in favor of the Defendants.

<u>CONCLUSION</u>

**BASED UPON THE UNPROTECTABLE NATURE OF THE DESIGNS OF THE PLAINTIFFS OF THE CONTROLLING LEGAL PRECEDENTS, THE MOTION TO DISMISS THE COMPLAINT SHOULD BE GRANTED.**

Dated:   New York, New York
         November 22, 2016

Respectfully submitted,

THE DWECK LAW FIRM, LLP

_____
JACK S. DWECK (0659)
10 Rockefeller Plaza, Suite 1015
New York, New York 10020
Telephone:  (212) 687-8200
Fax: (212) 697-2521

*Attorneys for Defendants*

S:\SECRETARY 2\CLIENT DOCS\APPAREL GROUP-MICHAEL\APPAREL GROUP ADV L.A. T SHIRT\MEMO OF LAW JS-GS DRAFT #6 11-22-16.DOCX