USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 08/17/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

L.A. T-SHIRT & PRINT, INC., *et al.*,

                              Plaintiffs,

             v.

RUE 21, INC., *et al.*,

                              Defendants.

No. 16-CV-5400 (RA)
No. 16-CV-5702 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

These consolidated actions address the scope of copyright protection for several designs depicting bears and elephants. Plaintiffs L.A. T-Shirt and Print, Inc. ("L.A. T-Shirt") and Ben Kwok claim that Defendants Rue 21, Inc., 6 Two Apparel, Ltd., Sears Holding Corp., Sears, Roebuck & Co., Kmart Corp., and Ross Stores, Inc. infringed their copyrights by selling T-shirts featuring their copyrighted designs. Before the Court is Defendants' motion to dismiss the complaint. For the reasons set forth below, Defendants' motion is denied.

## BACKGROUND

L.A. T-Shirt creates and obtains rights to two-dimensional designs used in apparel. *See* Compl. ¶ 1, No. 16-CV-5400 ("'5400 Compl.") (Dkt. 1). At issue in this case are four copyrighted designs.[1] The first is the "Tribal Bear," for which L.A. T-Shirt owns Registration No. VA 1-953-175. *See id.* ¶ 9. The Tribal Bear design depicts a bear sporting red sunglasses and a feathered headdress, with a red cup in its right hand. *See* Decl. of Ben Kwok ("Kwok Decl.") Ex. 1, No. 16-CV-5400 (Dkt. 68-1). Incorporated within the bear is a complex pattern of stripes filled with

---

[1] Images of Plaintiffs' copyrighted works, as well as Defendants' allegedly infringing works, are appended to this Opinion and Order.

various shapes, including diamonds and triangles, in a combination of different colors, the most prominent of which are shades of turquoise, red, and ivory. *See id.* The second copyrighted design is the "Party Bear," for which L.A. T-Shirt owns Registration No. VA 1-979-412. *See* Compl. ¶ 14, No. 16-CV-5710 ("'5710 Compl.") (Dkt. 1). The Party Bear also depicts a bear with the same internal pattern, wearing red sunglasses—but no headdress—and raising a red cup in its right hand. *See* Kwok Decl. Ex. 2 (Dkt. 68-2). The third copyrighted design is the "Navajo Pattern," for which L.A. T-Shirt owns Registration No. VA 1-979-414, which is the internal pattern used in the Tribal Bear and Party Bear designs. *See* '5710 Compl. ¶ 14; Kwok Decl. Ex. 3 (Dkt. 68-3). The final copyrighted design at issue is the "Ornate Elephant," which is registered by Ben Kwok under Registration No. VA 1-871-548 and exclusively licensed to L.A. T-Shirt. *See* Compl. ¶ 10, No. 16-CV-6021 ("'6021 Compl.") (Dkt. 1). The Ornate Elephant depicts an elephant, standing with its trunk hanging slightly to its right and featuring an intricate internal design of stripes, concentric circles, and other patterns, each including various shapes in shades of ivory, blue, red, and black. *See* Kwok Decl. Ex. 4.

Between April 2015 and March 2016, Plaintiffs discovered that Defendants were selling garments featuring "identical or substantially similar" designs. '5400 Compl. ¶ 11. First, in or around April 2015, L.A. T-Shirt discovered that Rue 21, Inc. ("Rue 21") and 6 Two Apparel Group Ltd. ("6 Two") were selling two allegedly infringing T-shirts: one featuring a bear with an ornate internal pattern, red sunglasses, and a feathered headdress, *see* '5400 Compl. ¶ 11; Kwok Decl. Ex. 9, and one featuring an elephant with a complex and colored internal pattern, *see* Compl. ¶ 11, No. 16-CV-5702 ("'5702 Compl.") (Dkt. 1); Kwok Decl. Ex. 12. Second, in February 2016, L.A. T-Shirt allegedly discovered that Ross Stores, Inc. ("Ross") was selling a T-shirt that, like the Tribal Bear design, depicted a bear with an ornate internal pattern, red sunglasses, and a feathered

2

headdress.  *See* Compl. ¶ 11, No. 16-CV-5706 ("'5706 Compl.") (Dkt. 1); Kwok Decl. Ex. 10.  Third, in March 2016, L.A. T-Shirt discovered that Sears Holdings Corp., Sears, Roebuck & Co., and Kmart Corp. (collectively, "Sears"), as well as 6 Two, were selling garments including designs that are, according to Plaintiffs, identical or substantially similar to the Party Bear, Navajo Pattern, and Ornate Elephant.  *See* '5710 Compl. ¶ 16; Compl. ¶ 15, No. 16-CV-6017 ("'6017 Compl.") (Dkt. 1); Kwok Decl. Exs. 5, 6, 11.  The T-shirt allegedly sold by Sears, for example, features a bear with an ornate internal design wearing red sunglasses and raising a red cup, framed by text reading "BAD DECISIONS MAKE GREAT STORIES."  *See* Kwok Decl. Ex. 11.  Finally, in March 2016, L.A. T-Shirt and Kwok allegedly discovered that Ross was also selling garments featuring an elephant that, in their view, was identical or substantially similar to the Ornate Elephant.  *See* '6021 Compl. ¶ 11; Kwok Decl. Ex. 13.

Between March 3, 2016 and May 26, 2016, L.A. T-Shirt filed six complaints against Defendants in the United States District Court for the Central District of California, asserting claims for copyright infringement and vicarious and/or contributory copyright infringement.[2]  Aside from the Defendants' names, the copyrights at issue, and the dates on which the allegedly infringing activity was discovered, the complaints are essentially identical.  The cases were subsequently transferred to this Court.  On August 16, 2016, the Court consolidated the cases into two actions: one involving alleged infringement of the Tribal Bear, Party Bear, and Navajo Pattern designs and one involving alleged infringement of the Ornate Elephant design.  *See* Order, No. 16-CV-5400 (Dkt. 43).

On September 6, 2016, Defendants filed answers in both of the consolidated actions.  *See* Answer, No. 16-CV-5400 (Dkt. 52); Answer, No. 16-CV-5702 (Dkt. 45).  On November 30, 2016,

---

[2] Kwok is named as a plaintiff in three of the actions, each of which involves alleged infringement of the Ornate Elephant design: Nos. 15-CV-5702, 16-CV-6201, and 16-CV-6017.

despite having already answered the complaints, Defendants filed a motion to dismiss the complaints for failure to state a claim or, in the alternative, for summary judgment. *See* Defs.' Mot. to Dismiss, No. 16-CV-5400 (Dkt. 58).[3] On December 16, 2016, Plaintiffs filed a brief in opposition. *See* Pls.' Opp'n Mem., No. 16-CV-5400 (Dkt. 67). On December 29, 2016, Defendants filed a declaration in reply. *See* Decl. of Jack S. Dweck in Supp. of Mot. to Dismiss ("Defs.' Reply Decl."), No. 16-CV-5400 (Dkt. 73).[4]

## LEGAL STANDARD

Because Defendants filed this motion to dismiss for failure to state a claim after filing an answer, the Court construes the motion as a motion for judgment on the pleadings under Rule 12(c). *See Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001); *accord Ne. Indus. Dev. Corp. v. Parkstone Capital Partners, LLC* (*In re Ne. Indus. Dev. Corp.*), No. 14-CV-7056 (NSR), 2015 WL 3776390, at *2 (S.D.N.Y. June 16, 2015); *Funnekotter v. Agric. Dev. Bank of Zim.*, No. 13-CV-1917 (CM), 2013 WL 6091616, at *2 (S.D.N.Y. Nov. 15, 2013). "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Hogan v. Fischer*, 738 F.3d 509, 514–15 (2d Cir. 2013). To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

---

[3] Defendants' motion was filed only in the lead case of one of the consolidated actions, No. 16-CV-5400. *See* Defs.' Mot. to Dismiss. Nonetheless, the motion's caption lists all six actions and states that it is filed on behalf of "6 Two Apparel Group, Ltd. and the co-Defendants in each action." *Id.* at 3.

[4] On June 1, 2017, Defendants advised the Court that Rue 21 had filed a voluntary bankruptcy petition in the United States Bankruptcy Court for the Western District of Pennsylvania. *See* Letter from Jack S. Dweck to Ct., No. 16-CV-5400 (June 1, 2017) (Dkt. 93). Pursuant to 11 U.S.C. § 362(a), this action is therefore stayed as to Rue 21. *See* Dkt. 94.

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). When considering a Rule 12(b)(6) motion, courts "accept[] plaintiffs' plausible allegations as true and draw[] all reasonable inferences in their favor." *Fernandez v. Zoni Language Ctrs., Inc.*, 858 F.3d 45, 48 (2d Cir. 2017).

"On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009) (per curiam)). "A complaint 'is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *accord Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Nicosia*, 834 F.3d at 230 (quoting *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010)). For a document to be considered "integral" to a plaintiff's complaint, the plaintiff must "*rely* on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough." *Id.* at 231 (emphasis in original) (quoting *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006)); *accord Chambers*, 282 F.3d at 153. Here, although Plaintiffs did not attach images of their copyrighted works or Defendants' allegedly infringing works to their complaints, Plaintiffs rely heavily upon

the appearance of these works—indeed, Plaintiffs' infringement claims turn on the similarities between the appearances of their works and Defendants'. Thus, the Court may consider images of Plaintiffs' and Defendants' works as "integral" to the complaints in evaluating Defendants' motion. *See Nicosia*, 834 F.3d at 230; *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (holding that documents could be considered as a part of the complaint where the "complaint explicitly refers to and relies upon" them).[5]

## DISCUSSION

"To prove a claim of copyright infringement, a plaintiff must show (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original." *Urbont v. Sony Music Entm't*, 831 F.3d 80, 88 (2d Cir. 2016); *accord Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). "Since direct evidence of copying is rarely possible, copying is generally established by showing (a) that the defendant had access to the copyrighted work and (b) the substantial similarity of protectible material in the two works." *Kregos v. Associated Press*, 3 F.3d 656, 662 (2d Cir. 1993). When establishing copying by circumstantial evidence, "there is an inverse relationship between access and probative similarity such that 'the stronger the proof of similarity, the less the proof of access is required.'" *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 56 (2d Cir. 2003) (alteration omitted) (quoting 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.03[D]). Thus, "if the two works are so strikingly similar as to preclude the possibility of independent creation, 'copying' may be proved without a showing of access." *Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995) (alterations omitted); *accord Repp v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997); *Gaste v. Kaiserman*, 863 F.2d 1061, 1067–68 (2d Cir. 1988); *Arnstein v. Porter*, 154 F.2d 464, 468–69 (2d Cir. 1946). While the issue of similarity is

---

[5] The Court does not, however, consider the contents of any other declarations either party has submitted in connection with the instant motion.

often reserved for the trier of fact, the Second Circuit has explained that, where the works in question are attached to the plaintiff's complaint or incorporated therein, "it is entirely appropriate for the district court to consider the similarity between those works in connection with a motion to dismiss, because the court has before it all that is necessary in order to make such an evaluation." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010); *see also, e.g.*, *Gal v. Viacom Int'l, Inc.*, 403 F. Supp. 2d 294, 305 (S.D.N.Y. 2005) ("[T]here is ample authority for the proposition that a district court may make [a determination of similarity] on a motion to dismiss for failure to state a claim under Rule 12(b)(6)."). "In copyright infringement actions, the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings." *Peter F. Gaito Architecture*, 602 F.3d at 64 (internal citations and quotation marks omitted).

In this case, Defendants do not dispute that Plaintiffs have obtained valid copyrights for the four designs at issue, each of which is federally registered. *See* '5400 Compl. ¶ 9; '5710 Compl. ¶ 14; '6021 Compl. ¶ 10. In support of their claim that Defendants illegally copied their works, however, Plaintiffs have not provided any allegations of access. "Access may be established directly or inferred from the fact that a work was widely disseminated or that a party had a reasonable possibility of viewing the prior work." *Boisson v. Banian, Ltd*., 273 F.3d 262, 270 (2d Cir. 2001); *see also Jorgensen*, 351 F.3d at 51 ("Access means that an alleged infringer had a 'reasonable possibility'—not simply a 'bare possibility'—of hearing the prior work; access cannot be based on mere 'speculation or conjecture.'" (citations omitted)). Here, none of Plaintiffs' complaints contains any allegations regarding the dissemination of their works or the likelihood that Defendants viewed them. Thus, since Plaintiffs have not alleged direct copying or access, they must show that Defendants' works are "strikingly similar" to their own. *Lipton*, 71 F.3d at

7

471.

"Striking similarity exists when two works are so nearly alike that the only reasonable explanation for such a great degree of similarity is that the later was copied from the first." *Gal*, 518 F. Supp. 2d at 538 (citation omitted); *see also, e.g.*, *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1179 (10th Cir. 2009) ("Striking similarity exists when the proof of similarity in appearance is so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded." (internal quotation marks omitted)). "The threshold required to establish striking similarity is 'stringent,' and it requires more than a showing of 'substantial' similarity." *Vargas v. Transeau*, 514 F. Supp. 2d 439, 445 (S.D.N.Y. 2007), *aff'd sub nom. Vargas v. Pfizer, Inc.*, 352 F. App'x 458 (2d Cir. 2009) (summary order). However, "[s]imilarity may be regarded as 'striking' even if somewhat less than verbatim." *Mowry v. Viacom Int'l, Inc.*, No. 03-CV-3090 (AJP), 2005 WL 1793773, at *10 (S.D.N.Y. July 29, 2005) (quoting 4 *Nimmer on Copyright* § 13.02[B]). "At base, 'striking similarity' simply means that, in human experience, it is virtually impossible that the two works could have been independently created." 4 *Nimmer on Copyright* § 13.02[B]; *see also Mowry*, No. 03-CV-3090 (AJP), 2005 WL 1793773, at *10 ("In all cases, the court's task 'is to apply logic and experience to determine if copying is the only realistic basis for the similarities at hand.'" (quoting 4 *Nimmer on Copyright* § 13.02[B])).

Critically, the term "striking similarity," like substantial similarity, is "properly reserved for similarity that exists between the protected elements of a work and another work." *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 101 (2d Cir. 2014); *see also, e.g.*, *Gaste*, 863 F.2d at 1068–69 (holding that "striking similarity" must "extend beyond" the works' unprotectible elements); 4 *Nimmer on Copyright* § 13.02[B]. Thus, when a court determines that a work contains

both protectible and unprotectible elements, it "'must take care to inquire only whether 'the *protectible elements, standing alone*, are . . . similar.'" *Williams v. Crichton*, 84 F.3d 581, 588 (2d Cir. 1996) (emphasis in original) (quoting *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995)); *see also Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 134–35 (2d Cir. 2003) ("The court, confronted with an allegedly infringing work, must analyze the two works closely to figure out in what respects, if any, they are similar, and then determine whether these similarities are due to protected aesthetic expressions original to the allegedly infringed work, or whether the similarity is to something in the original that is free for the taking."). Nonetheless, "the court should not lose sight of the forest for the trees; that is, it should take pains not to focus too intently on particular unprotected elements at the expense of a work's overall protected expression." *Coquico, Inc. v. Rodríguez-Miranda*, 562 F.3d 62, 68 (1st Cir. 2009).

"It is an axiom of copyright law that the protection granted to a copyrightable work extends only to the particular expression of an idea and never to the idea itself." *Reyher v. Children's Television Workshop*, 533 F.2d 87, 90 (2d Cir. 1976); *accord Authors Guild v. Google, Inc.*, 804 F.3d 202, 220 (2d Cir. 2015) ("[W]hile the copyright does not protect facts or ideas set forth in a work, it does protect that author's manner of expressing those facts and ideas."). "'Due to this idea/expression distinction, every idea, theory, and fact in a copyrighted work becomes instantly available for public exploitation at the moment of publication'; the author's expression alone gains copyright protection." *Golan v. Holder*, 565 U.S. 302, 328 (2012) (alterations omitted) (quoting *Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003)); *see also, e.g.*, *Feist*, 499 U.S. at 350; *Baker v. Selden*, 101 U.S. 99, 105 (1879).[6] The idea/expression dichotomy furthers copyright's

---

[6] The idea/expression dichotomy is "codified at 17 U.S.C. § 102(b): 'In no case does copyright protect . . . any idea, procedure, process, system, method of operation, concept, principle, or discovery . . . described, explained, illustrated, or embodied in [the copyrighted] work." *Golan*, 565 U.S. at 328 (quoting 17 U.S.C. § 102(b)).

constitutional purpose of "promot[ing] the Progress of Science and useful Arts," U.S. Const. art. I, § 8, cl. 8, by "assur[ing] authors the right to their original expression, but encourag[ing] others to build freely upon the ideas and information conveyed by a work," *Feist*, 499 U.S. at 349–50. It also "strikes a definitional balance between the First Amendment and the Copyright Act by permitting free communication of facts while still protecting an author's expression." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 556 (1985) (alterations and citation omitted); *see also Eldred*, 537 U.S. at 219 (describing the idea/expression dichotomy as one of copyright law's "built-in First Amendment accommodations").

There is no dispute that two-dimensional artworks, such as Plaintiffs' designs, are eligible for copyright protection. "The Copyright Act of 1976 defines copyrightable subject matter as 'original works of authorship fixed in any tangible medium of expression.'" *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1008 (2017) (quoting 17 U.S.C. § 102). "'Works of authorship" include 'pictorial, graphic, and sculptural works,' § 102(a)(5), which the statute defines to include 'two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings, including architectural plans,' § 101." *Id.* In this case, Plaintiffs registered their works as two-dimensional artworks, which qualify as "original work[s] of authorship" under the Copyright Act. *See* 17 U.S.C. § 102(a)(5).[7]

Defendants argue, however, that copyright protection does not extend to Plaintiffs' "depictions of animals," which they claim are nothing more than "basic ideas." Defs.' Mem. at 2–

---

[7] Plaintiffs do not claim copyright protection in T-shirts or any other garments, which are generally analyzed as "useful articles" under the Copyright Act. *See* 17 U.S.C. § 101; *Star Athletica*, 137 S. Ct. at 1012; *Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 455 (2d Cir. 1989). Thus, the Court considers only the extent to which Plaintiffs' designs, which Defendants have allegedly applied to T-shirts, are eligible for copyright protection.

3. Several courts have indeed determined that copyright protection does not extend to elements of pictorial, graphic, or sculptural works that do no more than depict an animal's natural appearance. *See, e.g.*, *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 551 (5th Cir. 2015) ("[A]natomical features on replicas of animals are ideas not entitled to copyright protection."); *Blehm v. Jacobs*, 702 F.3d 1193, 1204 (10th Cir. 2012) ("[C]ommon anatomical features such as arms, legs, faces, and fingers . . . are not protectable elements."); *Billco Int'l, Inc. v. Charles Prods., Inc.*, 776 F. Supp. 2d 105, 114 (D. Md. 2011) ("[W]hen works contain realistic depictions of animals or other naturally occurring items, the scope of the copyright protection for the work may be limited because the features and behavior of animals in nature are part of the public domain."). On the other hand, there can be no doubt that the original expression of an animal's appearance may be eligible for copyright protection: from Carl Fabritius's chained goldfinch[8] to Franz Marc's blue horses,[9] animals have long served as the subjects of some of the most original works of authorship. But the line between anatomy and expression is not always a fine one: the difference between a goldfinch on a museum wall and that in an ornithology text may be easier to see than to describe. In this case, the Court's task is to discern which elements, if any, of Plaintiffs' animal designs are eligible for copyright protection.

"Examples aid us in applying these abstract principles." *Williams*, 84 F.3d at 588. In *Coquico, Inc. v. Rodríguez-Miranda*, 562 F.3d 62 (1st Cir. 2009), the First Circuit held that several elements of a toy tree frog were protectible, including the placement of a Puerto Rican flag stitched to the frog's underbelly, as well as the frog's "distinctive stitching pattern," "idiosyncratic color

---

[8] *See* Carl Fabritius, *The Goldfinch* (1654), *available at* https://www.mauritshuis.nl/en/explore/the-collection/artworks/the-goldfinch-605/# (last visited Aug. 16, 2017).
[9] *See* Franz Marc, *Die Grossen Blauen Pferde* (*The Large Blue Horses*) (1911), *available at* https://walkerart.org/collections/artworks/die-grossen-blauen-pferde-the-large-blue-horses (last visited Aug. 16, 2017).

combination," "pose," and "dimensions, when combined with the aforementioned elements." *Id.* at 69. The First Circuit stressed that these elements were not "inevitable concomitants of an effort to produce an anatomically correct portrayal of the [frog]," particularly because tree frogs lack many of these features in nature. *Id.* In *Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003), by contrast, the Ninth Circuit held that copyright protection for a jellyfish sculpture did not extend to several elements that were simply "governed by jellyfish physiology," such as the sculpture's "tendril-like tentacles," "bright colors," or "oblong shroud," but could extend to some of the artist's original contributions, such as the "distinctive curls of particular tendrils" or "the arrangement of certain hues." *Id.* at 811–12. Finally, in *Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co.*, 509 F.2d 64 (2d Cir. 1974) (per curiam), the Second Circuit held that a pin in the shape of a turtle with jewels placed along its spine was not copyrightable, as "the idea of placing jewels on the back of the carapace" was "rather obvious" and "merely conforms to the normal shape of the turtle's back and the pattern of its vertebrae segments." *Id.* at 66. Viewed together, these authorities establish that copyright does not protect depictions of animals that are dictated by the animal's anatomy or physiology but may protect original expressions of the animal's appearance.[10]

In this case, several elements of Plaintiffs' animal designs are eligible for copyright protection. First, the complex patterns inside the Tribal Bear, Party Bear, and Ornate Elephant are protectible. It is well-established that "copyright protection extends to fabric designs." *Hamil Am. Inc. v. GFI*, 193 F.3d at 98. Here, the Navajo Pattern, for which L.A. T-Shirt owns a registered copyright and which is found inside the Tribal Bear and Party Bear designs, consists of a distinctive arrangement of geometric shapes, including stripes of triangles and diamonds of varying sizes and

---

[10] In *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996 (2d Cir. 1995), the Second Circuit held that a sweater design, which featured depictions of squirrels, was eligible for copyright protection. *See id.* at 1004. *Knitwaves* did not, however, explicitly address the extent to which the sweater's depiction of squirrels, as one element of its overall design, was itself protectible. *See id.*

colors. *See* Kwok Decl. Exs. 1, 2, 3. Similarly, the red, white, ivory, blue, and black pattern within the Ornate Elephant features a kaleidoscopic arrangement of concentric circles on the elephant's legs, an elaborate symmetrical design on the elephant's head, and stripes of densely packed geometric figures, of different shapes and sizes, on its ears and trunk. *See* Kwok Decl. Ex. 4. These geometric patterns constitute protectible elements of Plaintiffs' animal designs. *See, e.g.*, *Star Athletica*, 137 S. Ct. at 1012 (holding that "the arrangement of colors, shapes, stripes, and chevrons" on the surface of a cheerleading uniform was eligible for copyright protection); *Hamil*, 193 F.3d at 102 (holding that a pattern depicting small clusters of flowers and leaves was protectible); *Knitwaves*, 71 F.3d at 1004 (holding that a sweater's autumn-themed design of leaves and squirrels, arranged in stripes or panels, was protectible).[11]

Second, the placement of accessories, including red sunglasses, a feathered headdress, and a red cup on the Tribal Bear and Party Bear designs is protectible. Like the Puerto Rican flag stitched to the tree frog toy in *Coquico*, the sunglasses and headdress of the Tribal Bear design, as well as the sunglasses and red cup on the Party Bear design, do not reflect "an effort to produce an anatomically correct portrayal" of an animal. *Coquico*, 562 F.3d at 69; *cf. Herbert Rosenthal Jewelry*, 509 F.2d at 66 (holding that jewels placed upon a turtle pin's spine were not protectible, where they "merely conform[ed] to the normal shape of the turtle's back"). Moreover, these objects are not common accessories of the depicted animal—as would be, for example, a collar on the neck of a dog. *Cf. Nola Spice Designs*, 783 F.3d at 551 (finding that a ring of spheres around

---

[11] The Second Circuit's decision in *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759 (2d Cir. 1991) is not to the contrary. In *Folio Impressions*, the Second Circuit held that two fabric designs featuring arrangements of rose petals were not substantially similar in light of several differences between the designs. *See id.* at 765–66. Although the Circuit observed that "by the rose's very nature one artist's rendering of it will closely resemble another artist's work," *id.* at 766, it did not rule, as Defendants appear to argue, that the depiction of a rose in a design is not copyrightable, instead finding no infringement based on the differences between the rose designs at issue, *see id.*

a toy dog's neck was not protectible, as the ring "may be characterized as a *collar*," and "[c]ollars on dogs, like anatomical features, are common ideas that belong to the public domain" (emphasis in original)). Viewed in combination with the other original elements of Plaintiffs' designs, the placement of red sunglasses or a feathered headdress upon the bear in the Tribal Bear and Party Bear designs is a protectible element of the works. *See, e.g.*, *Boyds Collection, Ltd. v. Bearington Collection, Inc.*, 360 F. Supp. 2d 655, 661 (M.D. Pa. 2005) (finding that "clothing on a teddy bear" was a protectible element of a bear design).

Third, the color combinations of Plaintiffs' designs are protectible. While "[c]olor by itself is not subject to copyright protection," the "original combination or arrangement of colors should be regarded as an artistic creation capable of copyright protection." *Boisson*, 273 F.3d at 271 (citations omitted). In this case, the Tribal Bear and Party Bear designs contain a unique arrangement of contrasting colors, including various shades of turquoise, ivory, and red. *See* Kwok Decl. Exs. 1, 2. The Ornate Elephant also features an original use of colors, with reddish tusks and toes and a combination of blue, red, ivory, and black on the rest of its body. *See* Kwok Decl. Ex. 4. These colors, like the blue of Franz Marc's painted horses, do not correspond to the natural color of bears or elephants. Nor does the interaction of the colors in each design reflect the natural contrasts or combinations of colors in the animals' natural appearances. Accordingly, the color combinations of Plaintiffs' designs constitute protectible elements of their works. *See, e.g.*, *Coquico*, 562 F.3d at 69 (holding that the "idiosyncratic color combination" of the tree frog design was protectible); *Hamil*, 193 F.3d at 102 (finding that two fabric designs were substantial similar, where "both fabrics use the exact same colors in the same manner"); *Knitwaves*, 71 F.3d at 1000, 1004–06 (holding that "color schemes," including "'fall' colors" of "mustards and browns," were protectible elements of sweater designs).

Finally, the pose and posture of the animals in Plaintiffs' designs are protectible elements of the works. As several courts have determined, the "angle of the animal's head, the juxtaposition of its body parts, and the shape of the body parts" may be eligible for copyright protection. *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488, 494 (4th Cir. 1996); *see also Satava*, 323 F.3d at 813 (explaining that the "pose, attitude, gesture, muscle structure, facial expression, coat, or texture of [an] animal" may be protectible); *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 607 (1st Cir. 1988) (holding that "pose, posture, and facial expression" were protectible elements of a lawn statue in the shape of a deer). Here, the animals in Plaintiffs' designs strike distinctive poses: the Tribal Bear stands with his head turned to its left while holding a red cup with his right arm, *see* Kwok Decl. Ex. 1; the Party Bear stands with his head turned to its right and his right arm raised in the air with a red cup, as if making a toast, *see id.* Ex. 2; and the Ornate Elephant faces forward, with its trunk hanging slightly to its right, *see id.* Ex. 3. The bears' poses, in particular, are playful in nature: holding what appear to be cheap plastic cups often associated with parties and staring into the distance through a pair of sunglasses, these bears would appear more at home in the film *Dazed and Confused* than in an Animal Planet documentary. *See id.* Exs. 1, 2. The poses of the animals depicted in Plaintiffs' designs, therefore, constitute protectable elements of their works. *See, e.g.*, *Coquico*, 562 F.3d at 69 (holding that the "pose" of a toy tree frog was protectible).

Viewed in the light most favorable to Plaintiffs, it is at least plausible that Defendants' designs are "strikingly similar" to the protected elements of Plaintiffs' works. First, the bear depicted on the T-shirts allegedly sold by Rue 21, 6 Two, and Ross contains a nearly identical pattern, identical red sunglasses, and a nearly identical nine-feather headdress as the Tribal Bear. *See* Kwok Decl. Exs. 9, 10. Second, the bear depicted in the T-shirt allegedly sold by Sears stands

15

in a similar pose, with its head turned to its right and right arm raising a red cup, wears identical red sunglasses, and contains a striped pattern akin to that of the Party Bear. *See* Kwok Decl. Exs. 5, 11. Third, the pattern used in all the Defendants' T-shirts featuring bears is extremely similar to the Navajo Pattern. *See, e.g.*, Kwok Decl. Exs. 5, 7, 9, 10, 11. Fourth, the elephant featured in T-shirts allegedly sold by Rue 21, 6 Two, Ross, and Sears is identical in nearly all respects, including pattern, color, and pose, to the Ornate Elephant. *See* Kwok Decl. Exs. 6, 13, 14, 16. On the basis of these striking similarities, it is plausible to infer that Defendants could not have independently created their works.

To be sure, Plaintiffs' designs and Defendants' are not identical. Unlike the Tribal Bear design, for example, the bear depicted in the T-shirts allegedly sold by Rue 21, 6 Two, and Ross is not holding a red cup, tilts its head differently, and appears to have a brighter internal pattern. *See* Kwok Decl. Exs. 7, 9, 10. In addition, the pattern on the bear depicted on the T-shirt allegedly sold by Sears is slightly different from that of the Tribal Bear: it essentially reverses the striping pattern, although the designs and colors within each stripe remain remarkably similar. *See* Kwok Decl. Exs. 5, 11. These differences, though visible upon close inspection, are trivial in light of the overall similarities between the works. Indeed, these minor variations—brightening the hue of a color scheme or flipping a striped pattern—could even suggest a deliberate attempt to conceal the copying of Plaintiffs' designs. Accordingly, the differences between Plaintiffs' designs and Defendants' do not undermine the Court's conclusion that their works are strikingly similar. *See, e.g.*, *Lipton*, 71 F.3d at 472 (finding that the arrangement of words on a scarf was strikingly similar to the arrangement in the plaintiff's book, despite the fact that one word used on the scarf was not included in the book and despite minor changes to the order in which the words were arranged); *Dan River, Inc. v. Sanders Sale Enters., Inc.*, 97 F. Supp. 2d 426, 428 (S.D.N.Y. 2000) (finding

two fabric designs strikingly similar, although the pattern on one design was a "slightly more focused, less abstract, rendition" of the other); *Prince Grp., Inc. v. MTS Prod.*, 967 F. Supp. 121, 126 (S.D.N.Y. 1997) (finding that two polka-dot fabric designs were strikingly similar, where the color scheme of the allegedly infringing work was "not identical" but was "only slightly different in degree of shading"); *see also Knitwaves*, 71 F.3d at 1004 (holding that "differences in detail" between two autumn-themed designs, including the use of eight leaves in one rather than five in the other and the reversed placement of a squirrel relative to a leaf, "while requiring considerable ink to describe, do little to lessen a viewer's overwhelming impression that the two [infringing] sweaters are appropriations of the [copyrighted] sweaters").

Thus, the Court concludes that Plaintiffs have plausibly alleged that Defendants' works are strikingly similar to their own, such that a fact-finder could infer that Defendants copied their protected works. As a result, Plaintiffs have stated a claim for copyright infringement.[12]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is denied. The Clerk of Court is respectfully directed to terminate the motion pending at Docket No. 58.

SO ORDERED.

Dated: August 17, 2017
New York, New York

Ronnie Abrams
United States District Judge

---

[12] Because the Court finds that Plaintiffs' designs are eligible for copyright protection, as discussed above, Defendants' claim that Plaintiffs' copyright registrations are "invalid" and "nullified" is without merit. *See* Defs.' Mem. at 19–22. The Court need not address Plaintiffs' claims for vicarious and contributory copyright infringement, as these claims are not addressed in Defendants' motion to dismiss. *See generally* Defs.' Mem.

**APPENDIX**

| Plaintiffs' Copyrighted Works | Defendants' Allegedly Infringing Works |
|---|---|



"Tribal Bear"[13]



Rue 21 / 6 Two T-Shirt[14]



Ross Stores / 6 Two T-Shirt[15]



"Party Bear"[16]



Sears T-Shirt[17]

---

[13] Kwok Decl. Ex. 1. This Appendix does not include the "Navajo Pattern," *see* Kwok Decl. Ex. 3, which is the pattern incorporated into the "Tribal Bear" and "Party Bear" designs shown above.

[14] Kwok Decl. Ex. 9.

[15] Kwok Decl. Ex. 10.

[16] Kwok Decl. Ex. 2.

[17] Kwok Decl. Ex. 5.

| Plaintiffs' Copyrighted Works | Defendants' Allegedly Infringing Works |
|---|---|
|  **Ornate Elephant"**[19] |  **Rue 21 / 6 Two Apparel T-Shirt**[18]  **Sears T-Shirt**[20]   **Ross Stores T-Shirt**[21] |

---

[18] Kwok Decl. Ex. 12.
[19] Kwok Decl. Ex. 4.
[20] Kwok Decl. Ex. 6.
[21] Kwok Decl. Ex. 13.